## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

This Settlement Agreement and Release (hereinafter "Agreement") is entered into by and between **KELLEY TAYLOR ("TAYLOR")**, on behalf of herself, her heirs, executors, agents, representatives, administrators, survivors, assigns and anyone claiming through her, **APRIL USERY ("USERY")** on behalf of herself, her heirs, executors, agents, representatives, administrators, survivors, assigns and anyone claiming through her, and **TAYLOR WALLACE ("WALLACE"),** on behalf of himself, his heirs, executors, agents, representatives, administrators, survivors, assigns and anyone claiming through him (hereinafter collectively referred to as **"EMPLOYEES"**) and **CLAMORE IX, LLC,** and all its subsidiaries, affiliates, successors, and assigns (hereinafter collectively referred to as **"EMPLOYER"**).  All of the foregoing individuals and entities are hereinafter sometimes also collectively referred to as the "Parties."

**WHEREAS, TAYLOR** was employed by **EMPLOYER** from on or about January 13, 2019 until on or about July 2, 2020;

**WHEREAS, USERY** was employed by **EMPLOYER** from on or about January 29, 2018 until on or about November 24, 2018, from on or about August 16, 2019 until on or about September 12, 2019, and from on or about November 15, 2019 until on or about January 5, 2020;

**WHEREAS, WALLACE** was employed by **EMPLOYER** from on or about January 4, 2019 until on or about June 7, 2020;

**WHEREAS, EMPLOYEES** have alleged that **EMPLOYER** did not pay them minimum wage for all hours worked in violation of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, *et seq.*; and

**WHEREAS,** although **EMPLOYER** has denied and continues to deny that it violated **EMPLOYEES'** rights under the FLSA, or any other federal, state or local law, or state common law principle, the Parties desire to finally and forever resolve, compromise and settle any and all claims which **EMPLOYEES** have asserted or could have asserted and any and all claims they may have arising out of or in any way related to their work for or employment by **EMPLOYER.**

**NOW THEREFORE,** in consideration of the foregoing RECITALS which are incorporated herein, together with these premises, covenants, promises, and terms and conditions contained herein, the Parties agree as follows:

1.     As consideration for the release of all claims, **EMPLOYER** will pay **EMPLOYEES** the total sum of Twelve Thousand Five Hundred Dollars ($12,500.00) in compromise and settlement of any and all claims that they have asserted or could have asserted. The aforesaid sum is to be paid allocated as follows:

(a)     To **KELLEY TAYLOR**, the amount of One Thousand Six Hundred Sixty Dollars and 52/100 ($1,660.52), less regular withholdings, as compensation for back wages and One Thousand Six Hundred Sixty Dollars and 52/100 ($1,660.52) as liquidated damages under the

<div style="border:1px solid black; display:inline-block; padding:4px 40px;">

**EXHIBIT A**

</div>

FLSA (a W-2 will be issued for the back wage payment and a 1099 will be issued for the liquidated damages payment);

(b)     To **KELLEY TAYLOR**, the amount of One Hundred Dollars ($100.00) as consideration for the general release of all claims as set forth in Paragraph 3 below (a 1099 will be issued for the general release consideration payment);

(c)     To **APRIL USERY**, the amount of One Thousand Nineteen Dollars and 08/100 ($1,019.08), less regular withholdings, as compensation for back wages and One Thousand Nineteen Dollars and 08/100 ($1,019.08) as liquidated damages under the FLSA (a W-2 will be issued for the back wage payment and a 1099 will be issued for the liquidated damages payment);

(d)     To **APRIL USERY**, the amount of One Hundred Dollars ($100.00) as consideration for the general release of all claims as set forth in Paragraph 3 below (a 1099 will be issued for the general release consideration payment);

(e)     To **TAYLOR WALLACE**, the amount of One Thousand Two Hundred Thirty-Two Dollars and 89/100 ($1,232.89), less regular withholdings, as compensation for back wages and One Thousand Two Hundred Thirty-Two Dollars and 89/100 ($1,232.89) as liquidated damages under the FLSA (a W-2 will be issued for the back wage payment and a 1099 will be issued for the liquidated damages payment);

(f)     To **TAYLOR WALLACE**, the amount of One Hundred Dollars ($100.00) as consideration for the general release of all claims as set forth in Paragraph 3 below (a 1099 will be issued for the general release consideration payment);

(g)     **EMPLOYEES** were represented by Matthew Handley, Esq. of **HANDLEY FARAH & ANDERSON PLLC** which incurred attorney fees and costs on behalf of **EMPLOYEES. EMPLOYER** will pay **HANDLEY FARAH & ANDERSON PLLC** the amount of Four Thousand Three Hundred Seventy-Five Dollars and no/100 ($4,375.00) for attorney fees and costs (a 1099 will be issued for the attorney fees and costs payment);

(h)     **EMPLOYEES** acknowledge that the payments to them in Paragraphs 1(a), 1(c), and 1(e) herein constitute full payment for their back-wage damages and liquidated damages based on **EMPLOYER'S** alleged good faith defenses to their claims;

(i)     **EMPLOYEES** and **HANDLEY FARAH & ANDERSON PLLC** will receive the aforesaid sums within fourteen (14) calendar days following **EMPLOYEES'** execution of this Agreement and approval of this settlement by the Court, provided **EMPLOYEES** have not revoked the ADEA release pursuant to Paragraph 4 below; and

(j)     **EMPLOYEES**, through their counsel, shall submit this Agreement to the United States District Court for the Northern District of Georgia within three (3) days of execution for approval by the Court. **EMPLOYEES**, through their counsel, shall file all necessary documents to ensure settlement approval by the Court. The settlement approval documents must be approved by counsel for **EMPLOYER** prior to filing with the Court. This Settlement Agreement is contingent upon the Court's approval of the Settlement. If the Court refuses to grant final approval, this Settlement Agreement may be voided at either party's option, in which case

this Settlement Agreement will become void and will not be used for any purposes in connection with any lawsuit, administrative or other legal proceeding, claim, investigation, or complaint.

(k)     The payments described above shall be sent to the attention of Matthew Handley, Esq., Handley Farah & Anderson PLLC, 200 Massachusetts Avenue, NW, Seventh Floor, Washington, DC 20001.

2.     Although the payments to **EMPLOYEES** in Paragraph 1 above for liquidated damages, consideration for the general release, attorney fees, and legal expenses are non-wage income arising out of the settlement of their claims, **EMPLOYEES** understand and agree, in consideration of the aforesaid sums, that they are solely and entirely responsible for the payment of all federal, state and local taxes, penalties and interest, if any, which may be found to be due upon such amounts. **EMPLOYEES** agree to indemnify and hold harmless **EMPLOYER** against any claims for income taxes, penalties, interest and the **EMPLOYEES'** share of FICA, which may be found to be owed by **EMPLOYEES** arising from said non-wage payments.

3.     In consideration of the payments set forth in Paragraph 1, **KELLEY TAYLOR** on behalf of herself, her heirs, executors, agents, representatives, administrators, survivors, assigns and anyone claiming through her, **APRIL USERY** on behalf of herself, her heirs, executors, agents, representatives, administrators, survivors, assigns and anyone claiming through her, and **TAYLOR WALLACE** on behalf of herself, her heirs, executors, agents, representatives, administrators, survivors, assigns and anyone claiming through her (all hereinafter collectively referred to as "**EMPLOYEES**") do hereby knowingly, voluntarily and unconditionally release, acquit and forever discharge **CLAMORE IX, LLC** and all its subsidiaries and affiliates, successors and assigns, and its current and former partners, officers, shareholders, agents, members, directors, principals, heirs, insurers, attorneys and employees in their individual as well as corporate capacities (all hereinafter collectively referred to as "**EMPLOYER**") and all others of and from any and all claims arising on or before the execution of this Agreement, asserted by **EMPLOYEES** or which they could have asserted, and from any and all claims, liabilities, rights and causes of action they may have on account of or arising out of their employment with **EMPLOYER** and the termination thereof, of every nature and kind, known and unknown, whether based on federal or state law, statute, ordinance, regulation or common law principle, including but not limited to claims based on the Georgia Sex Discrimination in Employment Law, O.C.G.A. §§ 34-5-1 to 34-5-7, the Georgia Prohibition of Age Discrimination in Employment Law, O.C.G.A. § 34-1-2, the federal Age Discrimination in Employment Act of 1967, as amended, Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, Georgia Equal Employment for Persons With Disabilities Code, O.C.G.A. §§ 34-6A-1 to 34-6A-6, the Employee Retirement Income Security Act of 1974 as amended, the Civil Rights Act of 1991, the Rehabilitation Act of 1973, as amended, the Genetic Information Nondiscrimination Act, the Equal Pay Act of 1963, the Family and Medical Leave Act of 1993, the Occupational Health and Safety Act of 1970, the Georgia Minimum Wage Law, O.C.G.A. §§ 34-4-1 to 34-4-6, the Tennessee Public Protection Act of 1990, the Tennessee Human Rights Act, the Tennessee Disability Act, the Tennessee Occupational Safety and Health Act of 1972, the Tennessee Wage Payment and Work Hour Laws, and all claims for tortious discharge, defamation, libel and/or slander, assault or battery, breach of any alleged employment contract, negligent or intentional infliction of emotional distress, invasion of privacy, retaliatory discharge, or any other claim or cause of action arising out of their employment with

**EMPLOYER** and the termination thereof.  If any claim is not subject to release, to the extent permitted by law, **EMPLOYEES** waive any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which **EMPLOYER** or any other released entity and/or individual identified in this Agreement is a party.

**EMPLOYEES** warrant that they have received all benefits and compensation to which they are entitled under the Family and Medical Leave Act of 1993 and the Fair Labor Standards Act of 1938.  **EMPLOYEES** agree not to file or pursue any claims they may have for pain and suffering, negligence and/or intentional infliction of emotional distress or similar claims under the Georgia Workers' Compensation Law, O.C.G.A. §§ 34-9-1 to 34-9-432, or the Tennessee Workers' Compensation Law.  **EMPLOYEES** warrant that at the time of execution of this Agreement they have not filed any charges, demands, claims, or actions with any local, state, or administrative agency relating to their employment, separation therefrom, or the claims released herein.  This Agreement does not prohibit **EMPLOYEES** from filing other state or federal administrative charges or claims (*i.e.,* NLRB or other such agencies) or from participating in such matters; but, notwithstanding the foregoing, **EMPLOYEES** agree to waive their rights to recover individual relief in any charge, complaint, or lawsuit filed by them or anyone on their behalf against **EMPLOYER**.  **EMPLOYEES** acknowledge and agree that they do not have any claims under the Georgia Workers' Compensation Law or the Tennessee Workers' Compensation Law for any injuries they suffered while employed by **EMPLOYER**.  **EMPLOYEES** warrant and represent that they are not currently and have never received Medicare benefits, that **TAYLOR's** date of birth is August 14, 1985, **USERY's** date of birth is May 26, 1976, and **WALLACE's** date of birth is June 13, 1998.

4.      **EMPLOYEES** specifically acknowledge that they are waiving and releasing any rights they may have under the ADEA.  **EMPLOYEES** further acknowledge that they have received a copy of this Agreement; that they have had reasonable time to review and consider it; that they have read and understand all of the terms, conditions and the effect thereof; that they have been advised to consult with counsel prior to executing this Agreement and have consulted with counsel about it; that they have a period of at least twenty-one (21) days within which to consider whether to waive and release any ADEA claims they may have against **EMPLOYER** by entering into this Agreement; that to the extent this Agreement has been executed prior to the expiration of the 21-day period, **EMPLOYEES** have executed it freely, voluntarily, and without compulsion from **EMPLOYER**, and at their own election; that they have at least seven (7) days following the execution of this Agreement to revoke the Agreement as to the waiver and release of claims under the ADEA by notifying **EMPLOYER** in writing (via e-mail to its counsel at rlbowman@kramer-rayson.com) of their desire to revoke the ADEA waiver and release; that the waiver and release of their ADEA claims under this Agreement shall not be effective until the revocation period has expired; that they have executed this Agreement knowingly and voluntarily; that they do not rely upon any representations that may have been made by **EMPLOYER**, or its attorneys concerning this Agreement other than those made in this Agreement; that the consideration they are receiving under this Agreement is in addition to anything of value to which they are already entitled; and that they are not, by executing this Agreement, waiving any rights or claims that may arise after the date this Agreement is executed.

5.      The Parties acknowledge that this Agreement is made and executed in settlement of disputed claims for which **EMPLOYER** denies any and all liability; that they are settling this matter solely to avoid the cost of litigation; and that neither this Agreement nor the payments and other consideration herein identified, are to be construed as an admission of wrongdoing or liability on the part of **EMPLOYER**.

6.      Although the Parties understand this Agreement will be filed with the U.S. District Court for the Northern District of Georgia for approval, **EMPLOYEES** agree that the monetary terms of this Agreement are strictly confidential.  **EMPLOYEES** will not state that **EMPLOYER** has agreed to make or has made any payment to them or their attorneys or the amount of any payment; however, **EMPLOYEES** may state: "the matter has been resolved," or other substantially similar language.  **EMPLOYEES** agree that they shall not discuss or disclose the settlement or its terms in any way prior to preliminary approval of this Agreement, other than pursuant to obtaining judicial approval of this settlement, or in necessary disclosures to the Court. **EMPLOYEES,** for themselves and **EMPLOYEES'** counsel certify to **EMPLOYER** that they do not represent any other employees or former employees of **EMPLOYER** having or asserting potential wage-related, FLSA claims against **EMPLOYER. EMPLOYEES** and their counsel agree not to speak to the press, advertise, solicit, post on social media, or similarly publicize the settlement or its terms (including, but not limited to, publicizing on a website or using in marketing, advertising or promotional materials) in an effort to represent claimants similarly situated with **EMPLOYEES** to make or to file claims against **EMPLOYER**. If contacted regarding this settlement, **EMPLOYEES** and **EMPLOYEES'** counsel's response can be no "no comment" or be limited solely to words to the following effect: "The matter has been resolved." **EMPLOYEES'** counsel confirms that they will not upload and have removed any reference from their firm's website, social media, and any promotional material about this matter. **EMPLOYEES'** counsel will promptly notify **EMPLOYER'S** counsel of any third-party demand that they disclose information pertinent to this Settlement. Notwithstanding the foregoing, nothing in this Agreement shall prohibit **EMPLOYEES** from disclosing the amounts paid to them under this Agreement to (i) their counsel, members of their immediate family, or an accountant or other tax adviser, provided that each such person has been informed of this confidentiality obligation and agrees to be bound by its terms; or (ii) to the Internal Revenue Service, and state or local taxing authorities; or (iii) as is required by process of law, or in any action to enforce the terms of this Agreement, provided that such disclosure is protected from public disclosure by an appropriate confidentiality order to the extent permitted by applicable authorities.  This Agreement may be specifically enforced and may be used as evidence in an action relating to the breach of this Agreement, and may be disclosed to the Court for purposes of approving the terms of this settlement. If a breach of this confidentiality provision by **EMPLOYEES** is proved by **EMPLOYER**, **EMPLOYER** shall be entitled to recover from **EMPLOYEES** its actual damages arising from the breach, and its attorney fees and court costs incurred to pursue damages arising from such breach. **EMPLOYEES** also agree to refrain from making any remarks or statements, including on social media, derogatory to or which impugn the reputation, integrity, business practices, and/or character of **EMPLOYER.**

As a free and voluntary act, **EMPLOYEES** agree never to knowingly seek or accept employment or work for, with, or on behalf of any named defendant referred to herein as **EMPLOYER**, including work through a temporary agency at any time after the date of this Agreement.  If the provisions of this paragraph are breached by **EMPLOYEES,** their application

will be rejected by **EMPLOYER**, without any resulting liability to **EMPLOYER**. **EMPLOYEES** further agree that they will refer all prospective employers to Sue Reller (P.O. Box 51506, Knoxville, Tennessee 37950, dcrsuereller@gmail.com) and no one else, for all references and verifications of employment.  In response to any requests for references or verification of employment, Ms. Reller will provide only **EMPLOYEES'** dates of employment, position held, and income information (to the extent authorized by **EMPLOYEES**) and will make no further comments.  **EMPLOYEES** acknowledge and agree that if they or any third party directs an inquiry regarding their employment to any other employees or individuals at **EMPLOYER,** other than Ms. Reller, **EMPLOYER** is not liable for any information provided in response to that inquiry or any damages caused by or resulting from any such response.

7.      This Agreement is based upon a good faith determination of the Parties to resolve a disputed claim.  The Parties have not shifted responsibility of medical treatment to Medicare in contravention of 42 U.S.C. § 1395y(b). The Parties resolved this matter in compliance with both state and federal law.  The Parties made every effort to adequately protect Medicare's interest and incorporate such into the settlement terms.

**EMPLOYEES** represent and warrant that neither Medicare nor Medicaid has made any payment for medical services or items pursuant to 42 U.S.C. § 1395y and the corresponding regulations, or otherwise, relating to the claimed injuries and damages that are the subject of their claims.  **EMPLOYEES** further acknowledge and agree that **EMPLOYER** does not have an obligation or responsibility to pay any past or future injury related to medical expenses that have arisen or may hereafter arise out of or relate in any way to the claims asserted by **EMPLOYEES**, and that **EMPLOYER** has no obligation or responsibility to reimburse Medicare, Medicaid, the Centers for Medicare and Medicaid Services, or any other entity or person for any such past or future medical expenses.  **EMPLOYEES** acknowledge and agree that it is their responsibility alone to reimburse such entities for any payments made on their behalf for such past or future medical expenses.

8.      This Agreement contains the entire understanding and agreement between the Parties hereto and represents the full and final resolution of any and all issues regarding **EMPLOYEES'** work for or employment by **EMPLOYER**.  This Agreement may not be modified or amended in any manner without a written agreement signed and dated by all Parties and their counsel.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision.  The recitals are incorporated into this Agreement. Neither this Agreement nor any other agreement between the Parties, nor any uncertainty or ambiguity herein or therein, shall be construed or resolved using any presumption against any party hereto or thereto, whether under any rule of construction or otherwise.  On the contrary, this Agreement has been reviewed by the Parties and, in the case of any ambiguity or uncertainty, shall be construed according to the ordinary meaning of the words used so as to fairly accomplish the purpose and intentions of all Parties hereto.

9.      This Settlement Agreement and Release may be executed in any number of counterparts and by the different Parties hereto on separate counterparts, all of which together shall constitute a single agreement, but one counterpart set delivered to the U.S. District Court

DocuSign Envelope ID CB917BC8-2D51-4921-AA34-FE513E1D3DDC

for the Northern District of Georgia shall be marked the "Original," and all other counterparts shall be marked "Duplicate."

**IN WITNESS WHEREOF**, the parties have executed this Agreement to be effective as of this 27th day of July         , 2021.

**EMPLOYEES:**

Kelley Taylor

KELLEY TAYLOR

APRIL USERY

Taylor J Wallace

TAYLOR WALLACE

**EMPLOYEES' COUNSEL:**
**HANDLEY FARAH & ANDERSON PLLC**

By: Matthew Handley

MATTHEW HANDLEY

**EMPLOYER:**

**CLAMORE IX, LLC**

By: Deal C Bell

Its: President

Page 7 of 7